## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION | ) |
| | ) |
| MICHAEL R. HARDING and | ) |
| SALLY HARDING, his wife, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 17-251-MN-SRF |
| | ) |
| A. O. SMITH CORP., et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Presently before the court in this asbestos-related personal injury action are the motions

for summary judgment of A.O. Smith Corp. ("A.O. Smith") (D.I. 166), Air & Liquid Systems

Corporation[1] ("Air & Liquid") (D.I. 170), Burnham LLC ("Burnham") (D.I. 157), Crosby Valve

LLC ("Crosby") (D.I. 144), DAP Products, Inc. ("DAP") (D.I. 145), Dominion Nuclear

Connecticut, Inc. ("Dominion") (D.I. 164), Foster Wheeler LLC ("Foster Wheeler") (D.I. 151),

Gardner Denver, Inc. ("Gardner Denver") (D.I. 142), Rheem Manufacturing Company

("Rheem") (D.I. 155), Slant/Fin Corporation ("Slant/Fin") (D.I. 163), Spirax Sarco, Inc.

("Spirax") (D.I. 161), and Superior Boiler Works, Inc. ("SBW") (D.I. 159) (collectively,

"defendants"). Plaintiffs, Michael R. Harding ("Mr. Harding") and his wife, Sally Harding

(collectively, "plaintiffs"), did not respond to these motions. As indicated in the chart *infra* and

for the reasons that follow, the court recommends GRANTING defendants' motions for

---

[1] Defendant Air & Liquid Systems Corporation is a successor by merger to Buffalo Pumps, Inc.
("Buffalo"). (D.I. 171 at 1)

summary judgment.[2]

| Defendant | Motion for Summary Judgment |
|---|---|
| A.O. Smith Corporation | GRANT |
| Air & Liquid Systems Corp. | GRANT |
| Burnham LLC | GRANT |
| Crosby Valve LLC | GRANT |
| DAP Products, Inc. | GRANT |
| Dominion Nuclear Connecticut, Inc. | GRANT |
| Foster Wheeler LLC | GRANT |
| Gardner Denver, Inc. | GRANT |
| Rheem Manufacturing Company | GRANT |
| Slant/Fin Corporation | GRANT |
| Spirax Sarco, Inc. | GRANT |
| Superior Boiler Works, Inc. | GRANT |

## II.    BACKGROUND

### A. Procedural History

On January 25, 2017, plaintiffs originally filed this personal injury action against multiple

defendants in the Superior Court of Delaware, asserting claims arising from Mr. Harding's

alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On March 10, 2017, the case was removed

to this court by defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer

removal statute,[3] and 1446. (D.I. 1) A.O. Smith, Air & Liquid, Burnham, Crosby, DAP,

Dominion, Foster Wheeler, Gardner Denver, Rheem, Slant/Fin, Spirax, and SBW filed motions

---

[2] Defendants' opening briefs in support of their respective motions for summary judgment are as follows: A.O. Smith (D.I. 167), Air & Liquid (D.I. 171), Burnham (D.I. 158), Crosby (D.I. 147), DAP (D.I. 146), Dominion (D.I. 165), Foster Wheeler (D.I. 152), Gardner Denver (D.I. 143), Rheem (D.I. 156), Slant/Fin (D.I. 163), Spirax (D.I. 162), and SBW (D.I. 160).

[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

for summary judgment, individually. (D.I. 166, 170, 157, 144, 145, 164, 151, 142, 155, 163, 161, 159) Plaintiffs did not respond to these motions.[4]

## B. Facts

### 1. Mr. Harding's alleged exposure history

Plaintiffs allege that Mr. Harding developed lung cancer as a result of exposure to asbestos-containing materials during his service as a pipefitter[5] in the United States Navy, as well as from his civilian work. (D.I. 1, Ex. 1 at ¶¶ 3-4) Plaintiffs contend that Mr. Harding was injured due to exposure to asbestos-containing products that defendants manufactured, sold, distributed, licensed, or installed. (*Id.* at ¶¶ 4-13) Accordingly, plaintiffs assert claims for negligence, willful and wanton conduct, strict liability, and loss of consortium. (*Id.* at ¶¶ 14-32)

Mr. Harding was deposed on August 8 and 9, 2017. (D.I. 88) Plaintiffs did not produce any other fact or product identification witnesses for deposition.[6]

Before serving in the Navy, Mr. Harding first worked for Pickering Plumbing and Heating as a plumber apprentice in New Canaan, Connecticut from 1962-1963. (D.I. 1, Ex. 1, ¶ 3) While working for Pickering Plumbing and Heating, Mr. Harding "[d]id commercial plumbing, plumbing and heating in houses in residential, boiler rooms," and dealt with both residential and commercial boilers. (D.I. 156, Ex. 1 at 81:5-6, 81:13-15) Mr. Harding believes he worked on Weil McLain, A.O. Smith, Burnham, and American Standard residential boilers. (*Id.* at 81:19-22) He also recalls installing Weil McLain and American Standard sectional

---

[4] On September 26, 2018, Defense Liaison Counsel filed a joint status report confirming that no opposition to the pending motions was filed on the docket. (D.I. 207)

[5] Plaintiffs note Mr. Harding worked as a pipefitter in their original complaint, but excerpts from Mr. Harding's deposition also refer to his work as a fireman apprentice. (*See* D.I. 1, Ex. 1 at ¶ 3; D.I. 171, Ex. A at 73:22-24, 89:5-9)

[6] The deadline for completion of depositions of all co-worker, product identification, and other exposure testimony witnesses was October 13, 2017. (D.I. 47 at 3)

3

boilers, but was unsure as to whether he installed a Burnham sectional boiler. (*Id.* at 85:18-21)
Mr. Harding recounted that he removed sectional boilers manufactured by Weil McLain,
American Standard, A.O. Smith, Burnham, and Utica, though most were manufactured by Weil
McLain. (*Id.* at 97:7-20, 100:17-23) Additionally, Mr. Harding testified that he installed
package boilers manufactured by Burnham, American Standard, Utica, and A.O. Smith. (*Id.* at
112:7-20) Most of the package boilers he installed were manufactured by A.O. Smith. (*Id.* at
114:24-115:10) Mr. Harding also recounted how he worked with commercial boilers – the
majority of which were manufactured by Weil McLain. (*Id.* at 121:12-19) Mr. Harding alleges
he experienced exposure to asbestos while working on boilers through use of asbestos powder
that formed the base for a compound that he applied to boiler connections. (*Id.* at 83:13-84:12)
He further testified that he was exposed to this "asbestos rope and/or dried mud" upon removing
the boilers and had to clean up the area by sweeping, scraping, or hosing down the area. (*Id.* at
94:17-95:25) Mr. Harding described how the processes of installing and removing boilers
produced dust and how he would inhale the dust and get some dust on his clothes. (*Id.* at 96:2-
20, 98:22-99:25, 100:1-16, 110:11-111:25, 113:13-20)

Mr. Harding served in the Navy from 1963 to 1967. (D.I. 1, Ex. 1 at ¶ 3) On board the
*USS Valley Forge*, Mr. Harding worked as a pipefitter and was responsible for packing and
replacing valves. (D.I. 171, Ex. A at 89:5-9) When valves were not working, he would replace
them and if they were leaking, he would fix them. (*Id.* at 91:11-92:18) Mr. Harding would
repair packing at the top of the valve by taking the bonnet off, picking out the old packing,
cleaning with a wire brush, and then cutting and installing the new packing. (D.I. 156, Ex. 1 at
21:20-22:6) He believes the packing was made of asbestos and described how the packing was a
dusty process that left him inhaling the dust. (*Id.* at 22:22-23:7) Mr. Harding also worked on

4

flanges by replacing gaskets. (*Id.* at 27:10-14) He described how he would take out an old gasket, scrape the flange, and then make new gaskets out of sheet asbestos. (*Id.* at 27:13-18) He testified that replacing gaskets also produced dust. (*Id.* at 28:24-29:4) Mr. Harding performed this maintenance work on feedwater pumps, fuel oil pumps, condensate pumps, bilge pumps, and fire pumps. (*Id.* at 32:5-8, 54:18-55:9, 64:2-5, 70:9-23)

Mr. Harding removed insulation from the pipes leading from the pumps, which produced a cloud of dust that he inhaled. (*Id.* at 38:9-39:10) He would then replace the insulation by wrapping the pipe with a sheet asbestos product and covering the sheet with powdered asbestos cement that he would mix with water in a bucket, which also created dust that he inhaled. (*Id.* at 39:18-25) Mr. Harding worked on the *USS Valley Forge*'s boilers by welding tubes if they were leaking. (*Id.* at 42:3-7) When doing so, he was in the presence of other technicians who took old bricks out and installed new ones, which he described as a dusty job that caused him to breathe in dust. (*Id.* at 45:1-10)

Mr. Harding was also present when machinist mates took off the access panel of the turbines to get inside the casing and removed gaskets. (*Id.* at 48:11-49:4) While present, Mr. Harding inhaled the dust that this process created. (*Id.* at 49:10-13) Mr. Harding was not responsible for turbine repair, did not handle the turbine itself, and was not present for turbine repair, but was responsible for replacing piping going in or around the turbines. (*Id.* at 47:21-48:1)

After serving in the Navy, Mr. Harding worked as an apprentice for Chuck Fratoroli ("Fratoroli") in Stamford, Connecticut from 1968 to 1970. (D.I. 1, Ex. A at ¶ 3) As an apprentice, Mr. Harding worked on boilers, similar to the work he performed prior to his naval service. (D.I. 163, Ex. B at 285:1-286:10) In the late 1970s, Mr. Harding worked as a pipefitter

5

at Millstone Power Plant ("Millstone") in New London, Connecticut. (D.I. 165 at 2; Ex. C at 134:8-135:1) His work consisted of installing relief valve piping and flood tubes, removing insulation, and maintaining steam valves. (D.I. 165, Ex. C at 135:24-136:4, 136, 19-25, 141:12-15) Mr. Harding testified that he believed the steam lines were coated with asbestos. (*Id.* at 136:5-15) Mr. Harding was diagnosed with lung cancer in February 2015.[7] (D.I. 162, Ex. B at 26)

## 2. Plaintiffs' product identification evidence

Mr. Harding is the sole product identification witness in this case and his deposition occurred on August 8 and 9, 2017. (D.I. 88)

### a. A.O. Smith Corporation

Mr. Harding identified A.O. Smith as one of several manufacturers of sectional boilers he removed during his work as a plumber. (D.I. 167, Ex. A at 100:17-23) On cross-examination, however, Mr. Harding admitted he was mistaken and should not have identified A.O. Smith as a manufacturer of sectional boilers. (*Id.*, Ex. B at 257:18-258:7) Mr. Harding estimated that he installed about twelve A.O. Smith residential packaged boilers over the course of his career. (*Id.*

---

[7] Mr. Harding started smoking cigarettes in 1961. (D.I. 146, Ex. B at 25:8-11) By 1964, he was smoking one pack per day. (*Id.* at 26:8-12) After unsuccessful attempts, Mr. Harding eventually quit smoking completely in 2015. (*Id.* at 30:18-23; 27:7-22; 25:6-7; 27:12-17) Defendants suggest that plaintiffs are unable to prove causation in light of Mr. Harding's past smoking habits. (D.I. 146 at 4-5; D.I. 162 at 4-5) Here, neither plaintiffs nor defendants have produced expert testimony regarding Mr. Harding's history of smoking. In similar asbestos cases where the plaintiff has a past smoking habit and the parties have submitted expert testimony or reports, courts have not considered this smoking history. *See Brown v. General Elec. Co.*, 2012 WL 7761251 (E.D. Pa. 2012) (granting defendant's motion for summary judgment without discussion of plaintiff's past smoking habits in its analysis, even with an expert produced by defendant); *In re Asbestos Litig.*, 2014 WL 605844 (Del. Super. Ct. 2014) (concluding plaintiffs failed to meet product nexus standard under maritime or Arkansas law without analyzing plaintiff's past smoking habits, despite expert testimony produced by defendant). Therefore, Mr. Harding's smoking history is not considered relevant for purposes of this Report and Recommendation.

at 264:25-265:2) Mr. Harding was unable to provide details about A.O. Smith boilers and the general description of A.O. Smith boilers he gave was inconsistent with any boilers manufactured or distributed by A.O. Smith. For example, Mr. Harding testified that A.O. Smith boilers' fuel source was oil, but "A.O. Smith did not manufacture or sell oil-fired boilers." (*Compare id.* at 266:13-15 *with* Ex. C at ¶ 7) Further, Mr. Harding believes his exposure to asbestos from A.O. Smith boilers is narrowly rooted in his exposure to the flue compound. (*Id.* at 267:4-7) However, A.O. Smith "did not design, manufacture, sell, supply, specify, require, recommend, suggest, or approve the use of asbestos compound with its residential packaged boilers as described by Mr. Harding." (*Id.*, Ex. C at ¶ 10) Mr. Harding believes he was exposed to asbestos by using a flue mud compound when installing A.O. Smith boilers, but he was unable to identify the manufacturer of this compound and has no basis for believing that the compound contained asbestos. (*Id.*, Ex. B at 248:5-13, 266:20-24)

### b. Air & Liquid Systems Corp.

Mr. Harding did not identify any Air & Liquid products or exposure to any asbestos-containing Buffalo products, and he could not name any manufacturers of the pumps around which he worked. (D.I. 171, Ex. A at 90:6-17) Mr. Harding recounted how he worked around pumps while serving in the Navy aboard the *USS Valley Forge*. (*Id.* at 89:5-9; 91:11-92:24) However, he admitted he did not work on the pumps themselves, but instead on the valves that "led in and out of the pumps." (*Id.* at 89:17-19, 108:7-14)

### c. Burnham LLC

Burnham manufactured a variety of boilers – some of which contained asbestos-containing components, and others which did not contain asbestos-containing components. (D.I. 158, Ex. G at 4) Mr. Harding identified Burnham as one of several manufacturers of residential

7

and sectional boilers on which he worked. (*Id.*, Ex. A at 81:19-22, 100:17-23) However, he could not recall either installing or removing a Burnham sectional boiler. (*Id.* at 85:18-21; Ex. B at 280:19-281:8) Mr. Harding testified that he removed two or three Burnham packaged boilers on one occasion during his career. (*Id.*, Ex. B at 281:9-19) He believes he was exposed to asbestos through the flue connection compound associated to the removal of Burnham packaged boilers. (*Id.* at 282:10-14) Mr. Harding could not recall if the "mud" compound to which he was exposed while removing the Burnham package boilers was original to the boiler. (*Id.* at 282:15-25)

#### d. Crosby Valve LLC

Mr. Harding did not identify any asbestos-containing Crosby products or exposure to any Crosby products. (D.I. 147 at 5-6)

#### e. DAP Products, Inc.

Mr. Harding identified DAP as a manufacturer of caulk he used as a plumber both before and after his service in the Navy, but could not identify any specific asbestos-containing DAP product that was used. (D.I. 146, Ex. A at 151:2-4, 151:18-21) Mr. Harding testified that he has no knowledge that the DAP caulk he used contained any asbestos. (*Id.*, Ex. B at 273:2-5, 273:23-25) Mr. Harding believes that his exposure to asbestos in the course of working with DAP's caulk is rooted in the dust produced when he scraped off dried caulk on his hands. (*Id.* at 272:8-11) Mr. Harding described how the caulk was originally a wet product that would dry into a rubbery consistency. (*Id.* at 271:1-19; 272:8-23) Mr. Harding testified that if a thin coat of caulk dried on his hands, it was not particularly rubbery and he could scrape it off with his nail. (*Id.* at 272:17-19) He agreed that there was a small amount of dust that was produced, if at all, when he scraped off the caulk from his hands. (*Id.* at 272:20-23)

8

#### f. Dominion Nuclear Connecticut, Inc.

Mr. Harding did not identify an asbestos-containing Dominion product or exposure to any Dominion products. (D.I. 165 at 2) Dominion owns Millstone, where Mr. Harding worked as a union pipefitter on two occasions in the late 1970s. (D.I. 165 at 2; Ex. A at ¶¶ 3-4; Ex. C at 134:12-135:1) No premises liability causes of action have been made in the complaint, so no cause of action is alleged.

#### g. Foster Wheeler LLC

Mr. Harding did not identify an asbestos-containing Foster Wheeler product or exposure to any Foster Wheeler products. (D.I. 152 at 1-2)

#### h. Gardner Denver, Inc.

Mr. Harding did not identify an asbestos-containing Gardner Denver product or exposure to any Gardner Denver products. (D.I. 143 at 2, 6)

#### i. Rheem Manufacturing Company

Mr. Harding identified four residential boiler manufacturers, four manufacturers of packing boilers, and one manufacturer of commercial boilers with which he had experience during the course of his naval service and employment. (D.I. 156, Ex. 1 at 81:19-22, 112:7-20, 121:16-19) Mr. Harding also identified two manufacturers of sectional boilers he installed and five manufacturers of sectional boilers he removed. (*Id.* at 85:18-21, 97:5-9, 100:17-23) Despite these identifications, he did not identify Rheem as a manufacturer of any of these types of boilers he worked on, installed, or removed. (*Id.* at 81:19-22, 112:7-20, 121:16-19, 85:18-21, 97:5-9, 100:17-23; Ex. 2 at 101:13-16, 121:2-6)

#### j. Slant/Fin Corporation

Mr. Harding testified that while working for Fratoroli, he installed approximately two or

9

three residential package boilers manufactured by Slant/Fin. (D.I. 163, Ex. B at 285:13-286:10)
He further testified that he did not maintain these boilers. (*Id.* at 290:3-4) He could not describe
the exterior of a Slant/Fin packaged boiler. (*Id.* at 290:5-12) Mr. Harding testified that he
periodically installed Slant/Fin baseboard heating elements. (*Id.* at 285:13-19, 285:24-286:2)
Mr. Harding also admitted he does not associate his work with any Slant/Fin baseboard heating
elements with asbestos. (*Id.* at 309:16-24)

### k. Spirax Sarco, Inc.

Spirax manufactures steam traps and radiator valves and has not manufactured asbestos-
containing products. (D.I. 162 at 4; Ex. E) Mr. Harding did not identify an asbestos-containing
Spirax product or exposure to any Spirax products. (D.I. 162 at 4)

### l. Superior Boiler Works, Inc.

Mr. Harding did not identify an asbestos-containing SBW product or exposure to any
SBW product. (D.I. 160 at 2, 6)

## III. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a
dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury
to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.
2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed

10

material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R.

Civ. P. 56(e)(2)–(3).[8]  A plaintiff's failure to respond "is not alone a sufficient basis for the entry

of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d

168, 175 (3d Cir. 1990).  Even where a party does not file a responsive submission to oppose the

motion, the court must still find that the undisputed facts warrant judgment as a matter of law.

*Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56; *Lorenzo v.

Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)).  In other words, the court must still determine whether

the unopposed motion for summary judgment "has been properly made and supported."

*Williams v. Murray, Inc.*, 2014 WL 3783878, at *2 (D.N.J. July 31, 2014) (quoting *Muskett v.

Certegy Check Svcs., Inc.*, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010)).

### b. Maritime Law: Product Identification/Causation

The parties do not dispute that maritime law applies to all Naval/sea-based claims.[9]  In

_____

[8] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the
utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for
> summary judgment by affidavits or other evidentiary matter
> sufficient to show that there is no genuine issue as to a material
> fact.  The adverse party, in opposing the motion, does not produce
> any evidentiary matter, or produces some but not enough to
> establish that there is a genuine issue for trial.  Instead, the adverse
> party rests on averments of his pleadings which on their face
> present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note.  Before the amendment, the Third Circuit would
have denied summary judgment if the averments were "well-pleaded," and not conclusory.  *Id.*
However, the Advisory Committee noted that summary judgment is meant to pierce the
pleadings and to assess proof to see whether there is a genuine need for trial.  *Id.*  Accordingly,
the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule.
*Id.*  The amendment recognizes that, "despite the best efforts of counsel to make his pleadings
accurate, they may be overwhelmingly contradicted by the proof available to his adversary."  *Id.*
The amendment, however, was not designed to affect the ordinary standard applicable to
summary judgment.  *Id.*

[9] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must
meet both a locality test and a connection test.  In *Jerome B. Grubart, Inc. v. Great Lakes
Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for

each defendant, "that (1) he was exposed to the defendant's product, and (2) the product was a

substantial factor[10] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424

F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371,

375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30,

2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell*

*v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and*

*recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid*

*Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation*

*adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).[11]

---

A court applying the location test must determine whether the tort occurred on
navigable water or whether injury suffered on land was caused by a vessel on
navigable water. The connection test raises two issues. A court, first, must
"assess the general features of the type of incident involved," to determine
whether the incident has "a potentially disruptive impact on maritime
commerce[.]" Second, a court must determine whether "the general character" of
the "activity giving rise to the incident" shows a "substantial relationship to
traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[10] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts
often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W.
Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the
Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the
defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard
it as a cause, using that word in the popular sense, in which there always lurks the idea of
responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[11] Previously, courts in this Circuit recognized a third element and required a plaintiff to "show
that (3) the defendant manufactured or distributed the asbestos-containing product to which
exposure is alleged," *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb.
29, 2012), because the majority of federal courts have held that, under maritime law, a
manufacturer has no liability for harms caused by, and no duty to warn about hazards associated
with, a product it did not manufacture or distribute. This is also referred to as the "bare metal"
defense. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases);
*Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012). However, the Third

13

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[12] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

## B. Connecticut Law

The parties do not dispute that Connecticut law applies to all land based claims. (D.I. 109) Under Connecticut law, a plaintiff asserting a claim for asbestos-related injuries must "1) identify an asbestos-containing product for which a defendant is responsible, 2) prove that he has

---

Circuit rejected the bare metal defense, and held that a manufacturer of a "bare metal" product may be held liable for injuries sustained from later-added asbestos-containing materials, if the facts show that the plaintiff's injuries were a reasonably foreseeable result of the manufacturer's failure to provide a reasonable and adequate warning. *In re: Asbestos Prod. Liab. Litig. (Devries)*, 873 F.3d 232, 240 (3d Cir. 2017). This decision is currently under review by the Supreme Court of United States; on May 14, 2018, the Supreme Court granted the Petition for a Writ of Certiorari of the *Devries* decision. *See Air & Liquid Sys. Corp. v. Devries*, No. 17-1104, 2018 WL 753606 (U.S. May 14, 2018).

[12] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a substantial factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

14

suffered damages, and 3) prove that defendant's asbestos-containing product was a substantial factor in causing his damages." *Laposka v. Aurora Pump Co.*, 2004 WL 2222935, at *1 (Conn. Super. Sept. 14, 2004) (quoting *Roberts v. Owens-Corning Fiberglas Corp.*, 726 F. Supp. 172, 174 (W.D. Mich. 1989)).

The Connecticut Supreme Court has not spoken to a specific causation standard in asbestos cases, but the court has defined "substantial factor" in other contexts. The substantial factor test helps differentiate those injuries where the defendant "play[s] a part of so minor a character that the law cannot recognize [it] as [a cause]." *Birnie v. Electric Boat Corp.*, 288 Conn. 392, 411 (2008) (quoting *Norton v. Barton's Bias Narrow Fabric Co.*, 106 Conn. 360, 364-65 (1927)). The substantial factor causation standard requires contribution "to the development of the injury in *more than* a *de minimis* way." *Birnie*, 288 Conn. at 413 (emphasis in original). "Remote or trivial causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes." *Kowal v. Hofher*, 181 Conn. 355, 360 (1980).

# IV. DISCUSSION

## A. A.O. Smith Corporation

The court recommends granting A.O. Smith's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Harding was exposed to an asbestos-containing A.O. Smith product. During Mr. Harding's deposition, he originally identified A.O. Smith as a manufacturer of residential sectional boilers. (D.I. 167, Ex. A at 81:19-22, 100:17-23) However, when testifying the following day, counsel represented to Mr. Harding that "A.O. Smith did not manufacture sectional boilers" and Mr. Harding failed to dispute this representation, admitting that he was mistaken. (*Id.*, Ex. B at 257:24-258:7)

15

Additionally, Mr. Harding provided a description of A.O. Smith boilers that was inconsistent with their actual form. For example, Mr. Harding testified that A.O. Smith boilers' fuel source was oil, but "A.O. Smith did not manufacture or sell oil-fired boilers." (*Compare id.* at 266:13-15 *with* Ex. C at ¶ 7) Further, Mr. Harding believes his exposure to asbestos from A.O. Smith boilers is narrowly rooted in his exposure to the flue compound. (*Id.* at 267:4-7) However, A.O. Smith "did not design, manufacture, sell, supply, specify, require, recommend, suggest, or approve the use of asbestos compound with its residential packaged boilers as described by Mr. Harding." (*Id.*, Ex. C at ¶ 10) Because plaintiffs have not introduced evidence showing that A.O. Smith's products were a substantial factor in causing Mr. Harding's injuries, as required by Connecticut law, the court recommends granting A.O. Smith's motion for summary judgment.

## B. Air & Liquid Systems Corp.

The court recommends granting Air & Liquid's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Harding was exposed to an asbestos-containing Air & Liquid product. During Mr. Harding's deposition, he did not identify any Air & Liquid product. Plaintiffs have not introduced evidence showing any identification of Air & Liquid's products or evidence that Air & Liquid's products were a substantial factor in causing Mr. Harding's injuries, as required by maritime law. Therefore, the court recommends granting Air & Liquid's motion for summary judgment.

## C. Burnham LLC

The court recommends granting Burnham's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Burnham product was a substantial factor in causing Mr. Harding's injuries. Burnham contends that Mr. Harding cannot recall working on Burnham sectional boilers. (D.I. 158 at 4-5) Additionally, Burnham argues that Mr.

16

Harding's testimony as to use of a joint compound for the boiler connections cannot create a genuine issue of material fact as to whether Burnham's products were a substantial factor in causing his injuries under either Connecticut or maritime law because he cannot say the flue connection mud material originally came from the Burnham boiler. (*Id.* at 10)

Although Mr. Harding identified Burnham as one of the manufacturers of sectional boilers he installed and removed, Mr. Harding also "cannot be positive" he ever removed or installed a Burnham sectional boiler. (*Id.*, Ex. A at 81:19-22, 100:17-23, 85:18-21; Ex. B at 280:19-281:8) Mr. Harding responded in the affirmative when asked by counsel if "is it fair to say that sitting here today you can't recall if you ever removed [or installed] a Burnham . . . boiler?" (*Id.*, Ex. B at 280:22-24, 281:5-11) To the extent that Mr. Harding has worked on Burnham boilers, Mr. Harding believes he was exposed to asbestos due to the flue connection mud material. (*Id.* at 282:10-25) However, he admitted he "[has] no way of telling that" the mud was original to the boiler. (*Id.* at 282:15-21) Consequently, there is insufficient evidence to find the substantial factor test required by Connecticut and maritime law has been met, and the court recommends granting Burnham's motion for summary judgment.

### D. Crosby Valve LLC

The court recommends granting Crosby's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Crosby product was a substantial factor in causing Mr. Harding's injuries. During Mr. Harding's deposition, he did not identify any Crosby product. Because plaintiffs have not introduced evidence showing any product identification or product nexus between Crosby's products and his injuries, there is no basis for the court to find that a Crosby product was a substantial factor in causing his injuries, as required by maritime law. Therefore, the court recommends granting Crosby's motion for summary

judgment.

## E. DAP Products, Inc.

The court recommends granting DAP's motion for summary judgment. Although Mr.
Harding testified that he encountered DAP products during his work as a plumber, he did not
offer sufficient testimony to create a dispute of fact as to whether a DAP product was a
substantial factor in causing his injuries. (D.I. 146, Ex. B at 273:2-5, 273:23-25) Mr. Harding
admitted he had no reason to believe that DAP's caulk contained asbestos.[13] (*Id.*) Additionally,
Mr. Harding noted that a small amount of dust was produced after the originally wet caulk dried
and was scraped off his hands. (*Id.* at 272:15-23) Plaintiffs have failed to provide evidence that
DAP's products were a substantial factor in causing his injury under Connecticut law. *See
Birnie*, 288 Conn. at 412-13. As such, the court recommends granting DAP's motion for
summary judgment.

## F. Dominion Nuclear Connecticut, Inc.

The court recommends granting Dominion's motion for summary judgment, because
there is no genuine issue of material fact in dispute as to whether a Dominion product was a
substantial factor in causing Mr. Harding's injuries. Mr. Harding did not identify any Dominion
product during his deposition, and has not provided evidence of a product nexus between

---

[13] During the relevant time period, DAP manufactured both asbestos-containing and non-
asbestos-containing caulk compounds. (D.I. 146 at 1; Ex. C) Plaintiffs have not offered any
description or identification of the product or packaging for the caulk to which Mr. Harding was
exposed, so the court will not speculate about whether the DAP product he was exposed to
contained asbestos. (D.I. 146, Ex. A at 151:15-21; Ex. B at 269:5-270:25) *See Stigliano v.
Westinghouse*, 2006 WL 3026171, at *1 (Del. Super. Ct. Oct. 18, 2006) ("When the record
reveals that a defendant manufactured both asbestos-containing and non asbestos-containing
versions of a product during the time period of alleged exposure, in the absence of evidence
directly or circumstantially linking the plaintiff to the asbestos-containing product, the Court
cannot draw the inference of exposure and summary judgment on product nexus must be
granted.") (citing *Lipsomb v. Champlain Cable Corp.*, 1988 WL 102966 (Del. Super. Ct. Sept.
12, 1988)).

18

Dominion's products and his injuries. Plaintiffs have not introduced evidence that a Dominion product was a substantial factor in causing Mr. Harding's injury, as required by Connecticut law.

Furthermore, plaintiffs have not alleged a premises liability cause of action in the complaint, and have not opposed Dominion's argument that any premises liability claim should be dismissed. Under Connecticut law, the owner of a premises who employs an independent contractor to perform work is generally not liable for "any losses resulting from negligence in the performance of the work." *Mozeleski v. Thomas*, 818 A.2d 893, 897 (Conn. App. Ct. 2003). However, "where the employer retains control of the premises or supervises the work of the contractor, or where the work to be performed by the contractor is inherently dangerous, or where the employer has a nondelegable duty to take safety precautions imposed by statute or regulation, the employer may be vicariously liable to others for the negligent acts of the independent contractor." *Raboin v. N. Am. Indus., Inc.*, 749 A.2d 89, 92 (Conn. App. Ct. 2000). Mr. Harding testified that he was employed by and worked at the direction of independent contractors. (D.I. 165, Ex. C at 140:3-22; Ex. D at 183:18-23, 186:15-187:22) Plaintiffs have not provided evidence establishing that Dominion supervised Mr. Harding's work, Mr. Harding's work was inherently dangerous, or that Dominion had a nondelegable duty to take safety precautions pursuant to statute or regulation. Therefore, the court recommends granting Dominion's motion for summary judgment.

### G. Foster Wheeler LLC

The court recommends granting Foster Wheeler's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether Mr. Harding was exposed to an asbestos-containing Foster Wheeler product. During Mr. Harding's deposition, he did not identify any Foster Wheeler product. Because plaintiffs have not introduced evidence

19

showing a product identification or product nexus between Foster Wheeler's products and his injuries, there is no basis for the court to conclude that a Foster Wheeler product was a substantial factor in causing Mr. Harding's injuries, as required by Connecticut and maritime law. Therefore, the court recommends granting Foster Wheeler's motion for summary judgment.

## H. Gardner Denver, Inc.

The court recommends granting Gardner Denver's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Gardner Denver product was a substantial factor in causing Mr. Harding's injuries. During Mr. Harding's deposition, he did not identify any Gardner Denver product. Because plaintiffs have not introduced evidence showing a product identification or product nexus between Gardner Denver's products and his injuries, there is no basis for the court to conclude that a Gardner Denver product was a substantial factor in causing Mr. Harding's injuries, as required by Connecticut law. Therefore, the court recommends granting Gardner Denver's motion for summary judgment.

## I. Rheem Manufacturing Company

The court recommends granting Rheem's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Rheem product was a substantial factor in causing Mr. Harding's injuries. During Mr. Harding's deposition, he did not identify any Rheem product. Because plaintiffs have not introduced evidence showing a product identification or product nexus between Rheem's products and his injuries, there is no basis for the court to conclude that a Rheem product was a substantial factor in causing Mr. Harding's injuries, as required by Connecticut and maritime law. Therefore, the court recommends granting Rheem's motion for summary judgment.

20

## J. Slant/Fin Corporation

The court recommends granting Slant/Fin's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Slant/Fin product was a substantial factor in causing Mr. Harding's injuries. Slant/Fin argues Mr. Harding has failed to identify an asbestos-containing Slant/Fin product. (D.I. 163 at 9) Although Mr. Harding recounted his experience with Slant/Fin boilers and baseboard elements, he was unable to describe Slant/Fin products. (*Id.*, Ex. B at 285:5-286:2, 290:5-12) When asked if he "associate[d] any work with installing Slant/Fin baseboard heating elements with asbestos," Mr. Harding answered "no." (*Id.* at 309:18-20) Further, Mr. Harding answered affirmatively when asked: "So you don't associate any of your asbestos exposure in this case to Slant/Fin baseboard heating elements; correct?" (*Id.* at 309:21-24) Plaintiffs have not provided sufficient evidence to establish that Slant/Fin's product was a substantial factor in causing Mr. Harding's injuries, as required by Connecticut law. Consequently, the court recommends granting Slant/Fin's motion for summary judgment.

## K. Spirax Sarco, Inc.

The court recommends granting Spirax's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a Spirax product was a substantial factor in causing Mr. Harding's injuries. During Mr. Harding's deposition, he did not identify any Spirax product. Because plaintiffs have not introduced evidence showing a product identification or product nexus between Spirax's products and his injuries, there is no basis for the court to conclude that a Spirax product was a substantial factor in causing Mr. Harding's injuries, as required by Connecticut and maritime law. Therefore, the court recommends granting Spirax's motion for summary judgment.

21

## L. Superior Boiler Works, Inc.

The court recommends granting SBW's motion for summary judgment, because there is no genuine issue of material fact in dispute as to whether a SBW product was a substantial factor in causing Mr. Harding's injuries. During Mr. Harding's deposition, he did not identify any SBW product. Because plaintiffs have not introduced evidence showing a product identification or product nexus between SBW's products and his injuries, there is no basis for the court to conclude that a SBW product was a substantial factor in causing Mr. Harding's injuries, as required by Connecticut and maritime law. Therefore, the court recommends granting SBW's motion for summary judgment.

## V.    CONCLUSION

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends

granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| A.O. Smith Corporation | GRANT |
| Air & Liquid Systems Corp. | GRANT |
| Burnham LLC | GRANT |
| Crosby Valve LLC | GRANT |
| DAP Products, Inc. | GRANT |
| Dominion Nuclear Connecticut, Inc. | GRANT |
| Foster Wheeler LLC | GRANT |
| Gardner Denver, Inc. | GRANT |
| Rheem Manufacturing Company | GRANT |
| Slant/Fin Corporation | GRANT |
| Spirax Sarco, Inc. | GRANT |
| Superior Boiler Works, Inc. | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed.

R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages

each. The failure of a party to object to legal conclusions may result in the loss of the right to de

novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir.

2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: January **22**, 2019

Sherry R. Fallon
United States Magistrate Judge