# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| MICHAEL R. HARDING and ) | |
| SALLY HARDING, his wife, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 17-251-MN-SRF |
| v. ) | |
| ) | |
| A. O. SMITH CORP., et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Marley-Wylain Company ("Marley-Wylain" or "defendant").[1] (D.I. 168) For the following reasons, I recommend that defendant's motion for summary judgment should be DENIED-IN-PART and GRANTED-IN-PART.[2]

### II. BACKGROUND

**A. Procedural History**

On January 25, 2017, plaintiffs Michael R. Harding ("Mr. Harding") and his wife, Sally Harding (collectively, "plaintiffs"), originally filed this personal injury action against multiple

---

[1] Marley-Wylain Company is the successor in interest to The Weil-McLain Company. (D.I. 1, Ex. 1 at ¶ 7)
[2] Marley-Wylain's opening brief in support of its motion for summary judgment is D.I. 169 and plaintiffs' answering brief is D.I. 181. Plaintiffs filed their answering brief on June 7, 2018. (D.I. 181) Marley-Wylain's reply brief was due on June 14, 2018, but no reply brief was ever filed. (*See id.*) Therefore, the court decides the pending motion for summary judgment on the briefs submitted.

defendants in the Superior Court of Delaware, asserting claims arising from Mr. Harding's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On March 10, 2017, the case was removed to this court by defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[3] and 1446. (D.I. 1) On April 26, 2018, Marley-Wylain filed its pending motion for summary judgment. (D.I. 168)

## B. Facts

Plaintiffs allege that Mr. Harding developed lung cancer as a result of exposure to asbestos-containing materials during his service as a pipefitter in the United States Navy, as well as from his civilian work.[4] (D.I. 1, Ex. 1 at ¶¶ 3-4) Plaintiffs contend that Mr. Harding was injured due to exposure to asbestos-containing products that defendants manufactured, sold, distributed, licensed, or installed. (*Id.* at ¶¶ 4-13) Accordingly, plaintiffs assert claims for negligence, willful and wanton conduct, strict liability, and loss of consortium. (*Id.* at ¶¶ 14-32)

Mr. Harding was deposed on August 8 and 9, 2017. (D.I. 88) Plaintiffs did not produce any other fact or product identification witnesses for deposition.

Before serving in the Navy, Mr. Harding first worked for Pickering Plumbing and Heating as a plumber apprentice in New Canaan, Connecticut from 1962-1963. (D.I. 1, Ex. 1, ¶ 3) He served as a pipefitter in the Navy from 1963 to 1967. (*Id.*) Following his service, he settled in Stamford, Connecticut and worked as an apprentice for Chuck Fratoroli from 1968 to 1970. (*Id.*) He then worked for Verses Brothers as an apprentice and journeyman from 1970 to

---

[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[4] Relevant to plaintiffs' claim against Marley-Wylain, Mr. Harding's alleged exposure to Weil-McLain products is limited to his land-based employment before and after his naval service. (D.I. 181 at 3; D.I. 169 at 2)

2

1973. (*Id.*) Mr. Harding also worked for Boyd & Swift. (*Id.*) Finally, he worked for WR Johnson from approximately 1973 to 1993. (*Id.*)

Mr. Harding testified that during his career, he installed and removed sectional boilers and package boilers, but did not perform maintenance on these boilers. (D.I. 181, Ex. A at 82:5-6; Ex. B at 250:6-12) He noted that he installed approximately six to eight sectional boilers when he started his career, and they were phased out over the years. (*Id.*, Ex. A at 85:13-17) Approximately half of the sectional boilers he installed were manufactured by Weil-McLain. (*Id.* at 87:20-25) Mr. Harding was able to identify these boilers as such because each had a Weil-McLain nameplate and were a signature blue-gray color. (*Id.*, Ex. B at 252:7-21) He described that when installing a sectional boiler, he worked with push nipples, rods, and asbestos rope. (*Id.*, Ex. A at 82:17-18) These materials all came packaged together. (*Id.* at 83:2-5) Mr. Harding did not know the manufacturer or supplier of the rope, but knew that it came with the boiler. (*Id.*, Ex. B at 246:5-9) To install these sectional boilers, Mr. Harding lined up all the sections and pulled them all together with the rope. (*Id.*, Ex. A at 82:18-21) After this process, he would seal the sections together with a compound paste. (*Id.* at 83:18-19) He would mix the compound powder with water before spreading it on the seams with a trowel or by hand. (*Id.* at 83:20-83:25; 84:9-12) Mr. Harding did not recall the manufacturer of the compound. (*Id.*, Ex. B at 247:22-24) Mr. Harding testified that both handling the rope and mixing the mud compound created dust that he inhaled, and contends that these activities are the only ways he was exposed to asbestos from his work installing Weil-McLain boilers. (*Id.*, Ex. A at 87:12-19; Ex. B at 249:23-250:2)

Mr. Harding also recounted how he removed sectional boilers and how the cleanup process was very dusty. (*Id.*, Ex. A at 96:2-6) He stated that he inhaled the resulting dust and

3

his clothes became dusty. (*Id.* at 96:7-20) Mr. Harding estimated that he removed approximately five sectional boilers per year for at least twenty years. (*Id.* at 96:21-24) He noted that Weil-McLain manufactured at least fifty percent of the sectional boilers he removed. (*Id.* at 97:15-20; Ex. B at 251:1-11) Mr. Harding also stated that he removed both commercial and residential Weil-McLain boilers, though seventy percent of those were commercial boilers. (*Id.*, Ex. B at 251:15-22) While he did not know who supplied or installed the boilers he removed, he opined that the rope he came into contact with upon removal was the same rope from the boiler's installation. (*Id.* at 255:3-9) He believed that it was the original rope because "once a sectional boiler is installed, you don't take it apart unless you're dismantling it completely. You don't repair those ropes." (*Id.* at 255:13-15) Mr. Harding testified that his handling of and proximity to the rope and compound are the only ways he could be exposed to asbestos from the removal of Weil-McLain boilers. (*Id.* at 256:6-10)

### III. LEGAL STANDARD

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to

4

demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R.

Civ. P. 56(e)(2)–(3).[5]

### B. Connecticut Law

The parties do not dispute that Connecticut law applies to all land-based claims. (D.I. 109) Under Connecticut law, a plaintiff asserting a claim for asbestos-related injuries must "1) identify an asbestos-containing product for which a defendant is responsible, 2) prove that he has suffered damages, and 3) prove that defendant's asbestos-containing product was a substantial factor in causing his damages." *Laposka v. Aurora Pump Co.*, 2004 WL 2222935, at *1 (Conn. Super. Sept. 14, 2004) (quoting *Roberts v. Owens-Corning Fiberglas Corp.*, 726 F. Supp. 172, 174 (W.D. Mich. 1989)). "Although other jurisdictions have struggled with the issue in relation to asbestos-related claims, there is no settled law in Connecticut concerning any of these three critical elements." *Id.*

The Connecticut Supreme Court has not spoken to a specific causation standard in

---

[5] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

asbestos cases, but the court has defined "substantial factor" in other contexts. The substantial factor test helps differentiate those injuries where the defendant "play[s] a part of so minor a character that the law cannot recognize [it] as [a cause]." *Birnie v. Elec. Boat Corp.*, 953 A.2d 28, 41 (Conn. 2008) (quoting *Norton v. Barton's Bias Narrow Fabric Co.*, 138 A. 139, 140 (Conn. 1927)). The substantial factor causation standard requires contribution "to the development of the injury in *more than a de minimis way*." *Id.* (emphasis in original). "Remote or trivial causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes." *Kowal v. Hofher*, 436 A.2d 1, 3 (Conn. 1980).

## IV. DISCUSSION

### A. Products Liability/Asbestos Claim

As a preliminary matter, plaintiffs argue that even though Mr. Harding could not recall the manufacturer of the rope or compound, the fact that these products were packaged with Weil-McLain boilers renders Weil-McLain liable under Conn. Gen. Stat. § 52-572p. (D.I. 181 at 6-7) That section states:

- (a) A product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a third party unless: (1) The alteration or modification was in accordance with the instructions or specifications of the product seller; (2) the alteration or modification was made with the consent of the product seller; or (3) the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller.

- (b) For the purposes of this section, alteration or modification includes changes in the design, formula, function or use of the product from that originally designed, tested or intended by the product seller.

Conn. Gen. Stat. § 52-572p. Based on this statute, plaintiffs argue that product sellers may only use this defense for unforeseeable alterations and uses. (D.I. 181 at 6) Plaintiffs further rely

7

upon this statute to argue that defendant is responsible for the foreseeable use of the rope and compound. (*Id.* at 7)

Marley-Wylain argues that plaintiffs have not presented any evidence that Mr. Harding ever worked with or around an asbestos-containing product for which it is responsible. (D.I. 169 at 9) Marley-Wylain also asserts that Mr. Harding was unable to recall the manufacturer of the rope or compound. (*Id.*) Furthermore, defendant argues, even if plaintiffs were able to present evidence that Mr. Harding worked with or around an asbestos-containing product for which Weil-McLain is responsible, plaintiffs cannot show that such a product was a substantial factor in causing Mr. Harding's injuries. (*Id.*) Marley-Wylain provides no authority to support its argument that the rope and compound are not products for which it is responsible. (*See* D.I. 169 at 9-10) Marley-Wylain has not filed a rely brief; thus, it has failed to respond to plaintiffs' argument, supported by the record, that a material issue of fact exists as to the foreseeability of the use of asbestos-containing components with defendant's products. Plaintiffs contend that these products were advertised, shipped with Weil-McLain boilers, and required for the boilers to function properly. (D.I. 181 at 6; Ex. F)

Defendant has not met its evidentiary burden as the party moving for summary judgment. "To defeat a motion for summary judgment, the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' Instead, that party must come forward with sufficient evidence to support a jury verdict in his favor." *Heilweil v. ABB, Inc.*, 2004 WL 2284114, at *2 (Conn. Super. Ct. Sept. 14, 2004) (internal citations omitted) (quoting *Matsushita*, 475 U.S. at 586 (1986); citing *Anderson*, 477 U.S. at 263 (1986)). "It is only once the defendant's burden in establishing his entitlement to summary judgment is met that the burden shifts to the plaintiff to show that a genuine issue of fact exists justifying a trial."

8

*Lawton v. CBS Corp.*, 2015 WL 5135644, at *2 (Conn. Super. Ct. July 29, 2015) (internal brackets omitted) (quoting *Romprey v. Safeco Ins. Co. of America*, 77 A.3d 726, 735 (Conn. 2013)).

Although defendant has argued that plaintiffs have not provided evidence of the asbestos content of boilers, rope, or compound, such an argument "impermissibly attempts to shift its burden on summary judgment to the plaintiffs." *Rutan v. Wayne Combustion Sys.*, 2011 WL 7049490, at *2 (Conn. Super. Ct. Dec. 28, 2011) (emphasis omitted). Defendant presents no evidence other than Mr. Harding's deposition testimony to attempt to prove the absence of a genuinely disputed material fact. The question remains whether the rope and compound are "asbestos-containing product[s] for which [Marley-Wylain] is responsible." *Laposka*, 2004 WL 2222935, at *1. *See also Francoeur v. A.O. Smith Corp.*, 2011 WL 5084306, at *3-4 (Conn. Super. Ct. Oct. 7, 2011); *Rutan*, 2011 WL 7049490, at *2. Connecticut courts have admitted there is no settled law regarding this element, or any of the three elements for asbestos claims. *See Laposka.*, 2004 WL 2222935, at *1. However, Connecticut courts have denied motions for summary judgment where defendants have failed to provide evidence "negating the claims" or "dispel[ling] the existence of a genuine issue of material fact." *Francoeur*, 2011 WL 5084306, at *4; *Rutan*, 2011 WL 7049490, at *2.

There is also a genuine issue of material fact as to whether defendant's product was a substantial factor in causing Mr. Harding's injuries. Defendant claims that cutting the rope and applying the compound only produced a small amount of dust and is therefore *de minimis*. (D.I. 169 at 10) Defendant ignores Mr. Harding's testimony that he installed six to eight boilers when he started his career and removed five boilers per year for at least twenty years. (D.I. 181, Ex. A at 85:13-17; 96:21-24) Mr. Harding testified that at least half of these boilers were manufactured

9

by Weil-McLain. (*Id.* at 87:20-25; Ex. B at 251:15-22) Defendant has failed to satisfy its burden and has not presented any evidence or authority to demonstrate a lack of genuine issue of material fact regarding causation. *See Rutan*, 2011 WL 7049490, at *2; *Francoeur*, 2011 WL 5084306, at *2-4. Therefore, the court recommends denying defendant's motion for summary judgment.

### B. Punitive Damages Claim

Punitive damages are limited to situations "where a defendant's conduct is 'outrageous,' 'owing to gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citation omitted). "Punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are 'imposed for purposes of retribution and deterrence.'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). Under Connecticut law, punitive damages may be awarded in products liability actions if the plaintiff provides evidence that defendant acted with "reckless disregard for the safety of the product users, consumers or others who were injured by the product." Conn. Gen. Stat. § 52-240b.

In support of their claim, plaintiffs cite to one journal article explaining that the hazards of asbestos were suggested by the scientific community as early as 1935. (D.I. 181 at 4, 7; Ex. C) However, plaintiffs fail to produce any evidence regarding defendant's actual knowledge of asbestos hazards or conduct indicative of willful or wanton actions. *See Relyea v. Borg Warner Corp.*, 2014 WL 6736781, at *1 n.1 (E.D. Pa. Oct. 1, 2014); *In re Asbestos Litig.*, C.A. No. 15-395-GMS-SRF, 2017 WL 3592451, at *8 (D. Del. Aug. 21, 2017). Therefore, the court recommends granting defendant's motion for summary judgment with respect to plaintiffs'

punitive damages claims.

## V. CONCLUSION

For the foregoing reasons, the court recommends denying-in-part and granting-in-part defendant's motion for summary judgment. (D.I. 168)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 22, 2019

Sherry R. Fallon
United States Magistrate Judge